# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

TODD JOSEPH THOMPSON,

      Plaintiff,

v.                                                    Civ. No. 17-356 WJ/GJF

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

      Defendant.

## PROPOSED FINDINGS AND
## RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse Commissioner's Administrative Decision and Remand Claim" [ECF No. 14] and "Brief in Support of the Motion to Reverse and Remand" (collectively, "Motion"),[1] filed on August 2, 2017.  ECF No. 15.  The Commissioner responded on September 27, 2017.  ECF No. 21.  Plaintiff replied on October 25, 2017.  ECF No. 22.  On August 22, 2017, Chief U.S. District Judge William P. Johnson referred the above-captioned cause to this Court for recommended findings and disposition.  ECF No. 18. Having meticulously reviewed the entire record and the parties' pleadings, the Court finds that the Motion is not well-taken and recommends that it be denied.

## I.      BACKGROUND

Plaintiff is a fifty-four year old resident of Albuquerque, New Mexico.  Administrative R. ("AR") 56-57, ECF No. 11.  Plaintiff earned his high school diploma and then enlisted in the United States Air Force, where he served three periods of active duty between 1983 and 2011. AR 184, 672.  When not on active duty, Plaintiff also served as a federal law enforcement officer

---

[1] Plaintiff reserves the substance of his Motion for his Brief in Support.  Therefore, all citations to Plaintiff's Motion refer to Plaintiff's Brief in Support [ECF No. 15] and not the Motion itself [ECF No. 14].

at the U.S. Department of Veterans Affairs ("VA"). AR 184. Plaintiff reported that he stopped working on January 10, 2012. AR 183.

Plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II, Sections 216 and 223 of the Social Security Act ("the Act"), 42 U.S.C. §§ 416(i), 423 (2012), alleging disability beginning on January 6, 2012, due to post traumatic stress disorder ("PTSD"), spinal injuries, sciatica, complications from knee replacement, and sleep apnea. AR 183. Plaintiff's application was denied initially and upon reconsideration. AR 67, 80. At his request, Plaintiff received a de novo hearing before Administrative Law Judge ("ALJ") Myriam Fernandez-Rice on September 23, 2015, at which Plaintiff, his legal counsel, and a vocational expert appeared. AR 27-55. On November 16, 2015, the ALJ issued her decision, finding that Plaintiff was not disabled within the meaning of the Act. AR 12-22.

After the ALJ issued her decision, Plaintiff submitted additional evidence to the Social Security Administration's ("SSA's") Appeals Council and requested review. *See* AR 1-6, 244-45. The additional evidence consisted of a VA disability rating dated November 6, 2015, just 10 days before the ALJ issued her decision. *See* AR 22, 672. The VA determined Plaintiff to be unemployable *under its regulations* as of March 31, 2012, due to the combined effects of his right and left knee issues, lumbar spine issues, and PTSD. AR 672-73. The Appeals Council considered Plaintiff's VA rating and added it to the record, but found that it did not provide a basis for changing the ALJ's decision, and thus declined review on January 20, 2017. *See* AR 1-6. Consequently, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 422.210(a) (2017).

Plaintiff filed the instant appeal on March 21, 2017. ECF No. 1.

## II.     PLAINTIFF'S CLAIM

Plaintiff's lone allegation of error is that the Appeals Council erred by failing to properly evaluate the disability determination he received from the VA.  Pl.'s Mot. 8-12, ECF No. 15.

## III.    APPLICABLE LAW

### A.  Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[2]  The Court's review of that final agency decision is both factual and legal.  *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.")

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.  Substantial evidence does not, however, require a preponderance of the evidence.  *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003).  A court should meticulously review the entire record but should

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review.  20 C.F.R. § 404.981 (2015); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B. Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2015). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to determine if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f).

If a claimant is not prevented from performing his past work, then he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to his past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV.    THE ALJ'S DECISION

The ALJ issued her decision on November 16, 2015. *See* AR 9. At step one, she found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of January 6, 2012. AR 14. At step two, the ALJ found Plaintiff to suffer the following severe impairments: (1) sciatica, (2) degenerative disc disease, (3) status post reconstructive surgery on weight bearing joint, and (4) arthritis. AR 14. In contrast, the ALJ found Plaintiff's sleep apnea, depression, and PTSD to be non-severe. *See* AR 14-17.

To explain her assessment of Plaintiff's mental impairments as non-severe, the ALJ emphasized that Plaintiff reported in June 2013 that he was "not seeing a therapist, psychologist, or psychiatrist," nor "ha[d] he ever been hospitalized for psychiatric reasons." AR 15 (citing AR 508). She further noted that "there is no evidence that [Plaintiff] has ever used medication to manage his depression and PTSD symptoms," and that "[d]espite this lack of medication, [Plaintiff was] calm and appropriate in his mental disability evaluation, with a coherent thought process and full orientation." AR 15.

Then, specifically as to Plaintiff's depression, the ALJ observed that while Plaintiff reported depression during his consultative psychological examination, he described it in terms of being easily frustrated, lacking in motivation, and having difficulty sleeping. AR 15 (citing AR 508). The ALJ contrasted this description with Plaintiff's repeated denials of depression during his VA visits, which the ALJ interpreted as an indication that his depression "may be situational or brought on by psychological stressors." AR 15 (citing AR 301, 343, 604, 631).

The ALJ made similar observations concerning Plaintiff's PTSD, noting that at his consultative examination, he reported PTSD "after being in combat situations in Panama, Kuwait, and Iraq," which allegedly made it difficult for him to drive, led him to avoid fireworks, and produced "intrusive thoughts and memories." AR 15 (citing AR 508). The ALJ also recounted Plaintiff's testimony that he felt panic upon driving due to a "fear of improvised explosives along the roadside." AR 15 (citing AR 39-40). The ALJ found these accounts incongruent with Plaintiff's self-reported activities of daily living, where Plaintiff related that he was not only still capable of driving both cars and motorcycles, but also "actively involved with a motorcycle group that regularly goes on rides and performs charity work." AR 15 (citing AR 204, 214). Most importantly, the ALJ observed that "like his depression," Plaintiff denied having PTSD issues on numerous occasions to VA officials (citing 301, 330, 460, 631).

The ALJ then moved to step three, where she found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 14-17. The ALJ began with Plaintiff's physical impairments, finding that Plaintiff's sciatica and degenerative disc disease did not meet Listing 1.04 (disorders of the spine), as the "record [did] not contain evidence of nerve root compression, spinal arachnoiditis, or lumbar spine stenosis resulting in pseudoclaudication." AR 17. The ALJ

also found that Plaintiff's right knee replacement failed to satisfy Listing 1.02(A) (major dysfunction of a joint) or Listing 1.03 (reconstructive surgery), as the record did not show that Plaintiff "is unable to ambulate effectively as required by the [L]isting." AR 17. The ALJ recognized that Plaintiff "sometimes uses a cane," but saw no evidence "to show he needs to use an assistive device that limits the function of both upper extremities," which would have been required for Plaintiff to meet the definition of ineffective ambulation under Listing 1.00(B)(2). AR 18.

The ALJ then turned to Plaintiff's mental impairments and, despite having found them to be non-severe, nevertheless considered their severity under "the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments." AR 53. The ALJ determined the paragraph B criteria of these Listings[3] were not met "[b]ecause [Plaintiff's] medically determinable mental impairments cause no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area." AR 17.

First, the ALJ evaluated Plaintiff's activities of daily living and found him to have only a mild restriction. The ALJ looked to the reporting of Plaintiff's wife, who stated that Plaintiff could take care of the dog, perform light house work, and go shopping on a weekly basis for a couple of hours. AR 16. Plaintiff's wife also related that Plaintiff was "capable of

---

[3] Each listing under Listing 12.00 (Mental Disorders), except 12.05 and 12.09, consists of a statement describing the disorder(s) addressed by the listing, paragraph A (a set of medical of medical findings) and paragraph B criteria (a set of impairment-related functional limitations). 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, § 12.00 (2015). "Paragraph B" criteria describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations must be the result of the mental disorder described in the diagnostic description. To meet either relevant Listings, a claimant must exhibit at least two of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

*Id.* §§ 12.04(B), 12.06(B) (2015). The language of this regulation has been significantly altered since the time of the ALJ's decision, but the text above represents the regulation as it existed at the time of the ALJ's decision.

independently operating cars and motorcycles." AR 16. The ALJ found this consistent with other record evidence that revealed Plaintiff was "capable of adaptive activities such as cleaning, shopping, taking public transportation, paying bills, maintaining a residence, caring appropriately for [his] grooming and hygiene, cooking simple meals, using the telephone and using a post office." AR 16. Because Plaintiff could do so "without significant interruption from his alleged mental conditions, the ALJ found Plaintiff "to have no more than mild restrictions in this area." AR 16.

Second, the ALJ found Plaintiff to have mild difficulties in social functioning. The ALJ noted Plaintiff's self-reporting that "he gets angry with people easily," but contrasted this with Plaintiff's statements that "he is the president of the Freedom Riders motorcycle group and [ ] meets with them at least once a month" and that he regularly "meets with his sister's family or his children for dinner." AR 16. The ALJ further referenced evidence that Plaintiff "is capable of getting along with others, such as [his] family members, friends, neighbors, grocery clerks, landlords[,] [and] bus drivers." AR 16.

Third, as to Plaintiff's concentration, persistence, and pace, the ALJ again found Plaintiff to suffer only mild difficulties. The ALJ cited Plaintiff's statement that "he can only concentrate for five minutes at a time, and sometimes does not finish what he starts." AR 16. This corresponded to Plaintiff's clinical presentation, where he "had difficulty completing the serial sevens test during his mental disability evaluation." AR 16 (citing AR 510). But, "[d]espite his concentration issues," the ALJ observed that Plaintiff "enjoys solving crossword puzzles." AR 16. More importantly, the ALJ found, based on her review of the evidence, that Plaintiff was "capable of sustaining focused attention and concentration sufficiently long enough to permit the timely and appropriate[ ] completion of tasks commonly found in work settings." AR 16-17.

Lastly, regarding episodes of decompensation, the ALJ found that Plaintiff "has experienced no episodes of decompensation which have been of extended duration."  AR 17.

Because none of Plaintiff's impairments satisfied an applicable Listing, the ALJ moved on to the first phase of step four and assessed Plaintiff's RFC.  AR 17-20.  "After careful consideration of the entire record," the ALJ determined that Plaintiff:

> Has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except [Plaintiff] is only capable of standing and/or walking for 4 hours in an 8-hour workday; he can sit for 6 hours in an 8 hour workday; he can lift 20 pounds occasionally and 10 pounds frequently; he can never climb ladders, ropes or scaffolds; he can occasionally climb ramps or stairs; [Plaintiff] can frequently balance and stoop; he can occasionally crouch, kneel, or crawl; the claimant must avoid concentrated exposure to extreme cold, wetness, or humidity; he should avoid even moderate exposure to excessive noise.

AR 17-18.

To develop Plaintiff's RFC, the ALJ relied on two separate grounds.  First, the ALJ rendered an adverse credibility finding against Plaintiff, opining that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [his] symptoms are not entirely credible."  AR 18.  The ALJ explained that Plaintiff's "range of daily activities is inconsistent with someone alleging total disability due to back pain."  AR 18.  She cited to various activities, including Plaintiff's shopping, motorcycle riding, exercise routine, volunteer activities, and lastly, to Plaintiff's ability to push a lawnmower, which she found particularly "inconsistent with [Plaintiff's] allegations that he is severely limited due to the impairments to his back and knees."  AR 19.  To the ALJ, this "wide range of daily activities indicates that [Plaintiff] is physically active and that his impairments are not as severe as alleged."  AR 19.

Additionally, the ALJ detailed the various methods Plaintiff used to "effective[ly] control" his symptoms of back pain and knee pain through "a combination of braces, physical therapy, and medication."  AR 19.  She noted Plaintiff's use of braces as set forth both in

Plaintiff's administrative testimony, where he testified that he used a back brace two to three times a week to alleviate pain, and in his wife's third-party function report, where she also described his use of braces for his back and knees.  AR 19 (citing AR 33-34, 198).  The ALJ further noted that Plaintiff "has undergone physical therapy after his knee surgery, and he occasionally uses a cane to help to increase his mobility."  AR 19.  Principally, however, the ALJ relied upon Plaintiff's VA records, which revealed multiple instances where Plaintiff reported to the VA that his pain was well-controlled by medication.  AR 19 (citing AR 335, 542, 599).  VA records also demonstrated that, throughout 2012 and 2013, despite reports of sciatic pain, Plaintiff had "full extension, flexion, and a normal gait" as well as "no evidence of tenderness to percussion along the lumbar spine."  AR 19 (citing AR 336, 537).  These same records evinced a notable reluctance to intervene surgically to treat Plaintiff's spinal conditions, as he had already achieved a fifty percent improvement in his spine-related pain with conservative treatment.  AR 19 (citing AR 538).  In the aggregate, the ALJ interpreted the medical reports "showing effective control of [Plaintiff's] symptoms through medication," as indicating that Plaintiff's "[degenerative disc disease], sciatica, and status post knee replacement surgery are not as severe as alleged."  AR 19.

The ALJ bolstered her adverse finding as to Plaintiff's credibility by discounting the third-party report provided by his wife.  In her report of Plaintiff's activities, Plaintiff's wife claimed that he had difficulty sleeping, could only walk half a mile, and was often agitated.  AR 20.  Moreover, she lamented that "she ha[d] watched her husband become a man who barely leaves the house."  AR 20.  The ALJ considered and ultimately dismissed her statements as being "not consistent with the record as a whole."  AR 20.  The ALJ opined that "[d]espite [Plaintiff's wife's] statement that [Plaintiff] barely leaves his house, [Plaintiff] reports going out of the

house on his own multiple times per week to shop or participate in volunteer activities." AR 20.

Thus, the incongruity of her statements coupled with her inability to be considered a "disinterested third party witness" led the ALJ to discount the information provided by Plaintiff's wife.

Along with Plaintiff's adverse credibility finding, the ALJ also relied on the medical opinions in the record to determine Plaintiff's RFC. The ALJ began with the nonexamining consultative physicians, and accorded their opinions "some" weight. AR 19-20. She recounted that Dr. Nancy Armstrong, M.D., opined at the initial stage that Plaintiff was "capable of performing light exertional work and that he can stand and/or walk for 4 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; climb ramps, stairs, ladders, ropes, and scaffolds occasionally; and crouch and crawl occasionally." AR 19. On reconsideration, John Pataki, M.D., found the same. AR 19. The ALJ accorded these opinions only "some weight," as they were "consistent with medical evidence showing that [Plaintiff's] impairments are controlled through medication" and Plaintiff's activities of daily living, but she found only the minimal restrictions on climbing of ladders, ropes, and scaffolds to be insufficient to address Plaintiff's physical impairments. AR 20.

The ALJ next evaluated the opinion of Plaintiff's orthopedist, Dr. John Grasinger, M.D., and accorded the opinion great weight. The ALJ focused on Dr. Grasinger's opinion that Plaintiff could no longer "continue working as a police officer, that he should be limited to a sedentary or light job, and that he will probably not improve to the point where he can continue to be a police officer." AR 20. She found the opinion convincing as it was "consistent with the [Plaintiff's] medical reports showing significant improvement through conservative treatment" as well as his activities of daily living. AR 20. Furthermore, the ALJ specifically found Dr.

Grasinger's opinion that Plaintiff could not perform his past work as a police officer "consistent with medical reports showing the limiting effects of his physical impairments." AR 20.

Lastly, the ALJ evaluated the opinion of examining psychological consultant Amy DeBernardi, Psy.D. AR 15-16. The ALJ cited approvingly to Dr. Bernardi's finding that Plaintiff "has PTSD and mild depression, secondary to chronic pain and physical limitations, but is handling these issues fairly well." AR 15. The ALJ also discussed the Global Assessment of Functioning ("GAF")[4] score of 65 that Dr. Bernardi had assigned to Plaintiff, but found it both nonsevere and clinically insignificant. AR 16. Instead, the ALJ focused on three of Dr. Bernardi's findings. First, the ALJ recounted Dr. Bernardi's opinion that "while [Plaintiff's] PTSD and depression are unlikely to have a significant impact on his ability to maintain employment, he would likely have the most difficulty in environments that were loud or chaotic." AR 15. Second, she noted Dr. Bernardi's finding that "while [Plaintiff] was distractible, it appeared to be because of his chronic pain." AR 15. Lastly, the ALJ highlighted Dr. Bernardi's finding that "[Plaintiff's] stress tolerance skills were good and that he is capable of managing his own financial issues without assistance." AR 15. Based on these findings, the ALJ assigned great weight to Dr. Bernardi's opinion, as she found it to be "consistent with medical evidence of [Plaintiff] denying depression and PTSD symptoms." AR 15.

In the second phase of step four, the ALJ identified past relevant work as "law enforcement," DOT #375.263-014, a skilled, medium exertional position. AR 20. Then, at the

---

[4] The Global Assessment of Functioning test is "widely used for scoring the severity of illness in psychiatry." *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2880316/#B14 (last visited May 18, 2018). A GAF score of 65 indicates "[s]ome mild symptoms (e.g. depressed mood or mild insomnia) [or] some difficulty in social, occupational[,] or school functioning (e.g. occasional truancy, or theft within the household), but generally functioning well, [and] has meaningful interpersonal relationships." *See* https://msu.edu/course/sw/840/stocks/pack/axisv.pdf (last visited May 18, 2018).

third and final phase of step four, the ALJ found that Plaintiff could not return to this line of past relevant work, as "it is at the medium exertional level." AR 21.

At step five, the ALJ relied on the testimony of the VE to determine what jobs, if any, Plaintiff could still perform. The VE testified that an individual with Plaintiff's RFC could perform the jobs of routing clerk, DOT #222.687-022, and router, DOT #222.587-038. AR 21. Based on that testimony, the ALJ concluded that "considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 22. Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period and denied her claim. AR 22.

## V.    ANALYSIS

Plaintiff's Complaint asserts only one challenge, but the parties' briefing and recent Tenth Circuit precedent compel this Court beyond its four corners. On its face, Plaintiff's Complaint asserts no other basis for remand beyond that stated above: that the Appeals Council erred by failing to properly evaluate the disability determination he received from the VA. *See* Pl.'s Compl. 8-12; *supra* p. 3. Nevertheless, based on her reading of *Vallejo v. Berryhill*, 849, F.3d 951 (10th Cir. 2017), the Commissioner discerns that Plaintiff is raising an additional challenge to the substantial evidence underlying the ALJ's decision *writ large*. *See* Def.'s Resp. 15-20, ECF No. 21. Moreover, the Commissioner extensively counters said challenge. *See id.* Unsurprisingly, Plaintiff's Reply bursts through this open door and expresses a heretofore unarticulated second challenge to the substantial evidence supporting the ALJ's decision. *See* Pl.'s Reply 3-6, ECF No. 22.

Ordinarily, the Court would not consider an argument propounded by Plaintiff for the first time in his Reply. *See, e.g., United States v. Redcorn*, 528 F.3d 727, 738 n.4 (10th Cir. 2008) (citing *Hanh Ho Tran v. Trustees of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in opening brief are deemed abandoned or waived.") (citations omitted)); *Guidry v. Astrue*, Civ. No. 08–1846, 2009 WL 4884282, at *5, n.8 (D. Colo. Dec. 10, 2009) (citing *M. D. Mark, Inc. v. Kerr–McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009)) (noting that "the general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief"). *Accord Wheeler v. C.I.R.*, 521 F.3d 1289, 1291 (10th Cir. 2008) (issues raised for the first time in a reply brief are generally deemed waived). Yet, based on the Tenth Circuit's holding in *Vallejo, see infra* pp. 17-18, the Court will also carry out its charge to conduct a substantial evidence review of the ALJ's decision in conjunction with Plaintiff's VA disability rating. Ultimately, however, neither claim proves meritorious, and this Court recommends that the presiding judge deny Plaintiff's Motion and dismiss his Complaint.

### A.     The Appeals Council Properly Considered Plaintiff's VA Rating

In his original claim, Plaintiff contends that "[t]he Appeals Council failed to explain why it did not find the VA's determination that Thompson was unemployable persuasive and failed to explain what, if any, weight was assigned to the VA decision." Pl.'s Mot. 11. To support the challenge, Plaintiff directs this Court to multiple sources, including the regulation governing the introduction of evidence to the Appeals Council and various case citations, with the most prominent being the Tenth Circuit case of *Martinez v. Barnhart*, 444 F.3d 1201 (10th Cir. 2006). *See* Pl.'s Mot. 9-12; 20 C.F.R. § 404.970(b) (2016). By his reading of these sources, the VA's disability rating should be considered "highly probative and relevant to the disability determination in this case," and the Appeals Council's failure to weigh and explain its

assessment of Plaintiff's disability rating "creates a critical deficiency in the record that constitutes error, and requires reversal and remand." Pl.'s Mot. 12.

The Commissioner responds that Plaintiff's argument is "foreclosed" by the Tenth Circuit case of *Vallejo v. Berryhill*, 849 F.3d 951 (10th Cir. 2017). Def.'s Resp. 10-13. She further argues that rather than bolstering his position, the *Martinez* case actually diminishes Plaintiff's position. *See id.* at 12. The Commissioner closes by urging this Court to "reject Plaintiff's argument as it is contrary to agency regulations, contradicted by *Martinez* and *Vallejo*, and unsupported by the cases he cites." *Id.* at 15.

### 1.      Relevant law

Pursuant to 20 C.F.R. § 404.970(b) (2016), "new evidence [submitted to the Appeals Council] becomes a part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)). The Appeals Council is required to consider evidence submitted with a request for review "if the additional evidence is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision." *Id.* (quoting *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995)). If the evidence satisfies all three criteria, the Appeals Council "shall consider the additional evidence" and "evaluate the entire record." 20 C.F.R. § 404.970(b). The Appeals Council will only grant review, however, "if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Id.*

SSA consideration of VA disability ratings is further governed by 20 C.F.R. § 404.1504 (2017). At the time of Plaintiff's administrative claim and appeal, the regulation provided:

A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our

decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504 (2016).[5] Social Security Ruling ("SSR") 06-03p explained the SSA's pre-2017 approach to 20 C.F.R. § 404.1504, and noted that adjudicators "are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies." SSR 06-03p, 2006 WL 2329939 at *6 (Aug. 9, 2006), *rescinded* Mar. 27, 2017. "Therefore," SSR 06-03p detailed, "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." *Id.*

### 2.    The Appeals Council Properly Applied Governing Regulations

Consequently, at the time of Plaintiff's administrative claim and appeal, the ALJ and Appeals Council were required to *consider* Plaintiff's VA disability rating. Here, as the only administrative adjudicator presented with the evidence, the Appeals Council did so. The Appeals Council acknowledged that Plaintiff submitted his VA disability rating as additional evidence and elected to make it part of the record. *See* AR 6. The Appeals Council also communicated that it considered the reasons Plaintiff disagreed with the ALJ's decision, along with "the additional evidence listed on the enclosed Order," which included the VA rating. AR 2; *see* AR 6. Ultimately, the Appeals Council determined that the information did "not provide a basis" for changing the ALJ's decision, and declined review. AR 1-2. Most important among these steps for purposes of the instant analysis is that the Appeals Council (1) considered the evidence, and (2) declined review.

---

[5] The SSA fundamentally altered this regulation in 2017 to make clear that "in claims filed . . . on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits.' 20 C.F.R. § 404.1504 (2017).

Plaintiff maintains that this process was insufficient. He argues instead that the Appeals Council was required to go beyond these mandates by weighing and explaining its assessment of Plaintiff's VA rating, notwithstanding the Appeals Council's decision to decline review. But in doing so, Plaintiff disregards binding Tenth Circuit precedent.

In *Martinez*, the plaintiff argued that the Appeals Council failed to consider new treatment notes that were submitted to it. *See* 444 F.3d at 1207-08. The *Martinez* court disagreed, noting the Appeals Council's statement that it considered the additional evidence submitted to it, described the evidence in an attached order, and concluded that the evidence did not provide a basis for changing the ALJ's decision. *Id.* at 1207. The Court rebuffed the plaintiff's challenge that the Appeals Council should have specifically discussed the new treatment notes because the plaintiff "point[ed] to nothing in the statutes or regulations that would require such an analysis where new evidence is submitted and the Appeals Council denies review." *Martinez*, 444 F.3d at 1207-08.

In *Vallejo*, the Tenth Circuit revisited the issue of what findings the Appeals Council was required to make when it declined review. *See* 849 F.3d at 951. There, the plaintiff submitted new evidence to the Appeals Council, which it accepted and considered before denying review. *Id.* at 955-56. The plaintiff argued that the Appeals Council erred in denying his request for review without first expressly evaluating his treating source's medical opinion. *Id.* at 954. The district court accepted the plaintiff's argument and held that the Appeals Council should have evaluated the opinion like an ALJ by articulating how much weight, if any, it gave to the opinion and why. *Id.* The Tenth Circuit, however, reversed and remanded the district court's decision, holding that the Appeals Council did not err, because the regulations do not require the Appeals

Council to expressly analyze evidence when denying review of the ALJ's decision. *Id.* at 955.

The *Vallejo* court reasoned:

> We recognized in *Martinez* that an express analysis from the Appeals Council would be helpful to judicial review. 444 F.3d at 1207–08. But, as we said there - and reiterate here - "nothing in the statutes or regulations" requires the Appeals Council to provide that analysis. *Id.* at 1208. Remanding the case to the Appeals Council for further fact-finding when the Appeals Council did all it was required to do under the regulations wasn't an option for the district court. The district court's only option was to conduct a substantial-evidence review by assessing the entire agency record, including Ratner's never-before assessed opinion. *See O'Dell*, 44 F.3d at 858–59 (noting that when claimant submits new evidence to Appeals Council and Appeals Council accepts it, that evidence becomes part of the record to be considered by court in performing substantial-evidence review).

*Id.* at 956 (quotation marks and citations in original).

*Martinez* and *Vallejo* eviscerate Plaintiff's argument. Neither regulations nor precedent required the Appeals Council to do anything more than consider Plaintiff's VA disability rating. *See Martinez*, 444 F.3d at 1207-08; *Vallejo*, 849 F.3d at 955-56. The Appeals Council did so, and it declined review. Because it declined review, no express analysis was required, *see Vallejo*, 849 F.3d at 956, and none was given. Plaintiff's claim is foreclosed by binding precedent, and the Court recommends that this claim be denied.

### B. Substantial Evidence Supports the ALJ's Decision

As mentioned above, *Vallejo* held that the district court was required, when the Appeals Council declined review but accepted a treating physician's opinion into evidence (thus making it part of the record), to "conduct a substantial-evidence review by assessing the entire agency record, including [the treating physician's] never-before assessed opinion." *Id.* Thus, the Commissioner asserts, and the Court agrees, that the Court's focus must now shift to examining whether Plaintiff's VA rating, considered alongside the evidence presented to the ALJ, "undercut[s] the ALJ's finding" that Plaintiff was not disabled. *See Martinez*, 444 F.3d at 1208.

Furthermore, *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) requires the Court, in weighing the VA rating in the first instance[6], to "consider and explain why [it] did not find it persuasive." Having reviewed the record, the Court neither finds the VA's rating persuasive nor finds that it undercuts the substantial evidence supporting the ALJ's decision.

In its rating decision, the VA found that Plaintiff became unemployable under its laws and regulations as of March 31, 2012, because he could not "secure or follow a substantially gainful occupation" due to the combined effect of his right and left knee injuries, lumbar spine issues, and PTSD. AR 673-74. The decision referenced four sources of evidence for this finding: (1) self-generated applications for unemployment received from Plaintiff on August 6, 2013, and June 9, 2015; (2) a request for Plaintiff's employment information received on May 6, 2014; (3) VA medical records from the Veterans Affairs Medical Center ("VAMC") in Albuquerque, New Mexico, from May 12, 2011, through November 6, 2015; and (4) VA examination records from VAMC El Paso dated March 11, 2014, August 11, 2015, and November 3, 2015. AR 674. For its rationale, the VA stated:

> Although any one disability was not shown to cause an inability to work, the combined effects of these conditions do not allow continued employment. VA examinations note that your knees and back would not allow employment requiring physical efforts, and information shows that you were required to retire from employment as a police officer in January of 2012[ ] for this reason. PTSD symptoms would further limit employment in other areas, due to problems with sleep and anxiety.

AR 674. Finally, the decision encouraged Plaintiff "to apply for vocational rehabilitation" and noted that the "VA's Vocational Rehabilitation and Education program has helped many veterans with disabilities obtain suitable and rewarding employment." AR 674.

---

[6] The Court does so notwithstanding the fact that the Appeals Council bore no such burden to explain why it did not find the VA rating persuasive. *See Vallejo v. Berryhill*, 849 F.3d 951, 955-56 (10th Cir. 2017) (holding that nothing in the statutes or regulations requires the Appeals Council to provide analysis of newly submitted evidence when it declines review, thereby compelling the district court, upon judicial appeal, to conduct a substantial evidence review by assessing the entire agency record, including the theretofore unassessed opinion).

In contrast, the ALJ followed SSA's five-step sequential evaluation and found Plaintiff not disabled. *See* 20 C.F.R. § 404.1520 (2017) (describing the disability evaluation process). As part of that evaluation (and as detailed above), the ALJ reviewed volumes of evidence. *See supra*, pp. 5-12. Strikingly, the overwhelming majority of that evidence consisted of the *exact same* VA records reviewed by the VA to craft its own disability determination. *See* AR 251-506, 513-671 (VA medical records from February 28, 2011, to August 6, 2015). These VA records informed the ALJ's evaluation of Plaintiff's physical impairments. *See* AR 19 (citing AR 335, 336, 537, 538, 542, 599 (all VA records)). VA records similarly buttressed the ALJ's assessment of Plaintiff's mental impairments. *See* AR 15 (citing AR 301, 343, 604, 631). However, in addition to the VA records, the ALJ also reviewed expert evidence from both examining consultants and nonexamining consultants, none of which recommended an RFC more restrictive than that assigned by the ALJ. *See supra*, pp. 11-12. Thus, the ALJ drew upon a greater corpus of evidence than the VA in determining Plaintiff's RFC and determining him to be not disabled under SSA regulations. The VA's disability finding, which is based on less medical evidence than the ALJ's, and formulated under an administrative regime distinct from the SSA's, does not persuade the Court that Plaintiff would be disabled under SSA regulations.

Recognizing all of the above, the Court cannot now say that the VA's finding of unemployability, considered contemporaneously with the ALJ's decision, somehow renders the ALJ's decision infirm. To the contrary, the Court finds ample evidence in the record to support the conclusion that Plaintiff is not disabled under SSA regulations. *See Langley,* 373 F.3d at 1118. Moreover, nothing in the VA's disability rating "so overwhelm[s]" the "other evidence in the record" as to deprive the ALJ's decision of support by the substantial evidence standard. *See*

*id.*; *Hamlin*, 365 F.3d at 1214. As a consequence, the Court recommends that this claim be denied by the presiding judge.

## VI.    CONCLUSION

In the instant cause, the undersigned finds that the ALJ's decision was supported by substantial evidence and the correct legal standards were applied.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Motion to Reverse or Remand [ECF Nos. 14, 15] be **DENIED**, the Commissioner's final decision be **AFFIRMED**, and this action be **DISMISSED.**

**IT IS SO RECOMMENDED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**